# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KURT V. CORNIELSEN, GARRETT FIFE, MIKE FOLEY, ALI GHAJARNIA, MARCUS HESS, LUCAS HULING, TIMOTHY KACMAR, THOMAS KANE, SARAH KETVIRTIS, MINJONG KIM, JOEL KOS, WILL KUHL, RAMESH KUMAR, BRUCE LAWRENCE JR., MATT LECH, JASON LEUNG, JUN LIU, DAVE LOHMANN, MOHAMMAD MALEK, RICHARD MARYNOWKSI, ADITYA MEHTA, DAVID MEINHART, ERIC MOLAS, WES NORDINE, LUIS RAMIREZ, IAN REID, MICHAEL RICHARDS, BRET RIETOW, BRUCE RISHER, NICK ROUPAS, ANDERSEN SCHNEIDER, RYAN SHERMAN, ERIC SZURGOT, ANDREA TERMINI, MITCH TYSON, ALAN URBAN, TONI VOLLMERS, GORDON WALLACE, JACK WEBER, and TIMOTHY WRZESINSKI, all individuals, | |
| Plaintiffs, | |
| v. | No. 14-cv-00098 |
| | Judge Andrea R. Wood |
| INFINIUM CAPITAL HOLDINGS, LLC, a Delaware limited liability company, INFINIUM CAPITAL MANAGEMENT, LLC, a Delaware limited liability company and CHARLES F. WHITMAN, GREGORY EICKBUSH, BRIAN JOHNSON, and SCOTT ROSE, all individuals, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are former employees of Defendants Infinium Capital Holdings, LLC ("Infinium Holdings") and Infinium Capital Management, LLC ("Infinium," and along with Infinium Holdings, "Infinium Defendants"). Plaintiffs had loaned money to the Infinium Defendants and subsequently participated in what was known as the "Infinium Employee Capital Pool program" or the "Employee Equity Incentive Plan" ("Employee Program") in which Plaintiffs' loans were converted into equity in the company. Soon after Plaintiffs participated in the plan, the Infinium Defendants failed. Plaintiffs subsequently filed the instant lawsuit against the Infinium Defendants, as well as Infinium board members Charles Whitman, Gregory Eickbush, Brian Johnson, and Scott Rose (collectively, "Individual Defendants," and along with Infinium Defendants, "Defendants"). Plaintiffs allege that Defendants violated securities laws, breached their fiduciary duties, and engaged in common law fraud. The Individual Defendants and the Infinium Defendants each filed a motion to dismiss the action.[1] (Dkt. Nos. 14, 17.) For the reasons stated below, the Court grants the motions to dismiss.

## BACKGROUND

The following facts are drawn from Plaintiffs' Second Amended Complaint ("SAC") and accepted as true for purposes of this motion.[2]

Plaintiffs were all employees of Infinium, a diversified alternative asset and risk management firm with offices in Chicago, Houston, New York, and London. (SAC ¶¶ 2, 7-47, 49, Dkt. No. 39.) The Individual Defendants were all Infinium officers or members of its Board of Managers. (*Id.* ¶¶ 50-53.) Whitman also served as CEO of Infinium. (*See id.* ¶ 78.)

---

[1] Plaintiffs filed a second amended complaint during the pendency of Defendants' motions to dismiss the amended complaint. (*See* Dkt. No. 34.) With the parties' agreement, the Court deems the pending motions to dismiss the amended complaint as directed toward the SAC. (Dkt. No. 36.)

[2] For purposes of deciding a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the plaintiff's allegations as true and draws all permissible inferences in her favor. *See, e.g.*, *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

According to Plaintiffs, the Employee Program was designed to meet two goals: *first*, to replace capital that had been withdrawn from Infinium, and *second*, to have sufficient funds on hand for Infinium to purchase the equity interests of several of its members. Beginning in late 2011, Whitman and Johnson began making private, undisclosed redemptions of Infinium equity. (*Id.* ¶ 79.) Additionally, in approximately November 2011, Infinium, through the Individual Defendants, began exploring the purchase of the equity interests of its member George Hanley, who served on the Advisory Board of Infinium, and his affiliates. (*Id.* ¶ 62.) Hanley and his affiliates owned a substantial equity stake in Infinium. (*Id.*) By November 2011, Infinium had agreed to redeem the equity interest of its member Nathan Laurell, who also served on its Advisory Board, for $8,604,779. (*Id.* ¶ 63.)

Prior to March 2, 2012, Plaintiffs made loans to Infinium collectively in the amount of approximately $5,053,373.37. (*Id.* ¶ 61.) These loans ranged in amounts from $5,000 to $550,000. (*Id.*) Beginning on or about January 1, 2012, Infinium and the Individual Defendants began to offer Plaintiffs an opportunity to participate in the Employee Program, under which Plaintiffs' loans to Infinium would be converted into equity. (*Id.* ¶ 65.) According to Plaintiffs, this would allow Infinium and the Individual Defendants to replace a portion of the equity that Hanley, Laurell, and their affiliates were redeeming and to provide trading capital for the business. (*Id.* ¶ 65.)

Infinium first solicited participation in the Employee Program in an e-mail dated February 14, 2012. (*Id.* ¶ 66.) Infinium held three so-called "town-hall" meetings on February 16, 17, and 22, 2012, to discuss the details and merits of Plaintiffs participating in the Employee Program. (*Id.* ¶ 67.) Each Plaintiff attended at least one of these three town-hall meetings, all of which were organized by Infinium purportedly to "provide [Plaintiffs] a high level overview of

3

the goals and mechanics of the Employee [Program]." (*Id.*) During these town-hall meetings, and at other times prior to March 2, 2012, Defendants represented that if Plaintiffs elected to convert their loans to Infinium into equity or purchase equity in Infinium, that there would be a single class of equity in Infinium and that all equity holders—current and future—would be treated equally in all respects and at all times. (*Id.* ¶ 68.) During the town-hall meetings, Defendants also touted the availability of an untapped, $20 million dollar credit facility from Fifth Third Bank that would be available after the offering to fund Infinium's business and to pay down the debt due to Hanley, Laurell, and their affiliates. (*Id.* ¶ 71.)

Infinium prepared and disseminated on February 14, 2012 a "Private Placement Memorandum" ("PPM") to Plaintiffs. (*Id.* ¶ 72.) The PPM purportedly disclosed the risks associated with acquiring equity in Infinium. (*Id.*) The PPM addressed Infinium's acquisition of the equity ownership of Hanley, Laurell, and their affiliates as follows:

> **Redemption Debt.** In connection with the redemption debt of the equity of interests of ICM held by George Hanley, Nathan Laurell, and their affiliates, which redemption was effective as of January 1, 2012, the Company will issue secured debt of approximately $53,000,000. The debt owed to George Hanley, Nathan Laurell and their affiliates will be payable over a period of five (5) years….

(*Id.* ¶ 73.)

In the course of its soliciting the conversion of their loans to equity through the Employee Program, on March 2, 2012 Infinium wrote to Plaintiffs and explained that any monies converted from debt to equity (or otherwise invested) in the Employee Program would be redeemable 50% in the first year (2013) and 50% in the following year (2014). (*Id.* ¶ 74.) The March 2, 2012 correspondence also told Plaintiffs that they would be able, if they desired, to withdraw all of their equity investments from the Employee Program in just two years. (*Id.*) Prior to March 2, 2012, Defendants also provided certain Plaintiffs with documents that represented that after

4

Hanley, Laurell, and their affiliates redeemed their equity, Infinium would have remaining equity of $49,987,424. (*Id.* ¶ 76.)

Based upon the representations made in the PPM, the town hall meetings, and other written communications, Plaintiffs each elected to convert their loans to equity and, in some cases, to invest additional funds and to participate in the Employee Program. (*Id.* ¶ 77.)

On or about March 8, 2013, Infinium suspended Plaintiffs' redemption rights, claiming that Infinium was in default in its payment obligations to Hanley, Laurell, and their affiliates. (*Id.* ¶ 80.) On or about September 1, 2013, Infinium's acting Chief Executive Officer, Mark Palchak, revealed during an "investor call" with Plaintiffs ("Investor Call") that their investments through the Employee Program prior to March 2, 2012 had become "worthless" and were valued at "negative $18,000,000." (*Id.* ¶ 81.) Palchak further represented that to avoid a takeover by Hanley, Infinium had converted a portion of Hanley's and Laurell's debt to equity and agreed to eliminate the Plaintiffs' right to redeem their investments in the Employee Plan. (*Id.* ¶ 82.) During the Investor Call, Palchak also revealed that although Plaintiffs' equity was now "worthless," there was another class of equity in Infinium, which he referred to as the "Family Office Equity." Palchak claimed that this other class of equity was unaffected by the aforementioned events, as it was superior to Plaintiffs' equity interest and had been invested under an agreement which protected it from certain losses. (*Id.* ¶ 83.)

Plaintiffs subsequently brought this lawsuit, asserting a number of claims based on the loss of their investments in the Employee Plan, including causes of action for federal securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder (Count I); common law breach of fiduciary duty (Count II); and common law fraud (Count III). Defendants seek to have all of these claims dismissed in their

5

entirety pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

**DISCUSSION**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). In deciding such a motion, the Court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 9(b) requires a plaintiff alleging fraud to state the circumstances constituting the fraud "with particularity." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)). In other words, Rule 9(b) requires a plaintiff pleading fraud "to state 'the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni \*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

## I. Section 10(b) of the Exchange Act and Rule 10b-5

To state a claim under Rule 10b-5, a plaintiff must allege that: (1) the defendant made a misstatement or omission (2) of material fact; (3) with *scienter*; (4) in connection with the purchase or sale of securities; (5) on which the plaintiff justifiably relied; (6) and that proximately caused the plaintiff's economic loss. *See Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 648 (7th Cir. 1997). To satisfy the final element, a plaintiff must allege both transaction causation and loss causation—that is, the plaintiff must allege "that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of sale" and "that it was the very facts about which the defendant lied which caused its injuries." *Id.*

Complaints alleging violations of Rule 10b-5 are subject to Rule 9(b)'s heightened pleading standard. *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). Allegations of securities fraud are also subject to the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), which requires that "[t]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Furthermore, "the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).

In this case, Plaintiffs claim that Defendants made a number of actionable misstatements and omissions. Among other things, Plaintiffs allege the following:

- Defendants falsely represented that if Plaintiffs elected to convert their loans to Infinium into equity through the Employee Program, there would be only one class of equity in Infinium; whereas in reality there were two classes of equity, one of which was superior to the class offered in the Employee Program (SAC ¶¶ 91-92, Dkt. No. 39);

7

- Defendants did not disclose that Plaintiffs' class of equity was immediately reduced to a value below $0 (*Id.* ¶ 93);

- Defendants' representation that Plaintiffs would be able to redeem 50% of their investments in the Employee Program in year one and the other 50% in year two was false when it was made (*Id.* ¶ 94);

- Defendants represented that Infinium would have access to a $20 million line of credit, when in fact "it was almost certain that Infinium's lender, Fifth Third Bank, would eventually terminate" the line of credit (*Id.* ¶¶ 95-96);

- Defendants falsely represented that after redeeming the equity interests of Hanley, Laurell and their affiliates, over $49,987,424 of equity would remain (*Id.* ¶ 97); and

- Defendants also made a number of other material omissions. (*Id.* ¶ 101.)

Defendants challenge Plaintiffs' pleading of their Rule 10b-5 claim on a number of grounds. Defendants argue that Plaintiffs failed to identify speakers with particularity, failed to plead an actionable misstatement, insufficiently pleaded *scienter*, and insufficiently pleaded loss causation. Because the Court finds that Plaintiffs have failed to allege sufficiently that the Defendants made actionable misstatements under the heightened pleading standard of Rule 9(b), the Court addresses the first two arguments only.[3]

### A. Two Classes of Equity Interest

Plaintiffs allege that Defendants made a material misrepresentation of fact by failing to disclose that:

> there were two classes of equity interests in Infinium: (a) one which would bear risk of losses, or Plaintiffs' equity in the Employee Capital Pool program, and (b) another, of which Plaintiffs were not a part, the so-called "Family Office Equity," that would bear little (or no) risk of loss and, upon information and belief, was beyond (1) the reach of certain creditors of Infinium and held subject to an agreement with Infinium restricting the losses it could sustain and, that, (2) limited the application of certain expenses of Infinium to the equity.

---

[3] The Court's determination that it is unnecessary to reach the remaining arguments should not be understood as an endorsement of Plaintiffs' positions.

(SAC ¶ 92, Dkt. No. 39.) Defendants argue that disclosures in the PPM bar a Rule 10b-5 claim with respect to the two classes of equity interest. The PPM specifically notes that "[t]he Board has the right to sell or issue additional Interests or other equity interests of the company to Members or third parties on terms that may be senior to, junior to, or on parity with, the terms of the Interests held by the then current Members." (PPM at 8, Dkt. No. 16-1.)[4]

The Court agrees that Plaintiffs' claims relating to the existence of two classes of equity interests must be dismissed. The PPM clearly disclosed the possibility that Defendants would sell additional equity interests to third parties that were senior to those held by Plaintiffs. This disclosure bars any claim that there was a material misrepresentation. *See e.g., In re VMS Sec. Litig.*, 752 F. Supp. 1373, 1395 (N.D. Ill. 1990) (finding disclosures in prospectus to be adequate and granting defendants' motion to dismiss securities fraud claims); *Nielsen v. Greenwood*, 849 F. Supp. 1233, 1243 (N.D. Ill. 1994) (dismissing Rule 10b-5 claim where prospectus adequately disclosed risks of investment and priority of distributions in case of event of default).

Plaintiffs make a number of arguments in an attempt to salvage their claims regarding the two classes of equity. All of them lack merit. First, Plaintiffs argue that Defendants misrepresented that there would be a single class of equity and that all equity holders would be treated equally at the Town Hall Meetings in February 2012. (Pls.' Resp. at 3, Dkt. No. 28 (citing SAC ¶ 66, Dkt. No. 39)). However, Plaintiffs have failed to identify which Defendant made these

---

[4] The PPM was referenced in the complaint but not attached to it. (*See* SAC ¶¶ 72-73, Dkt. No. 39.) The Individual Defendants did attach a copy of the PPM to their Motion to Dismiss (*see* Dkt. No. 16-1), however, and therefore the document may be properly considered. *See Venture Assocs v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (citing Fed. R. Civ. P. 10(c)). "In the event of a conflict between a complaint proper and an attachment thereto that forms the basis of the plaintiffs' claims, the attachment prevails, and dismissal is warranted if, as here, the attachment negates the plaintiffs' claims." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 n.5 (7th Cir. 2010).

statements. Rule 9(b) requires that, in pleading a fraud-based claim, the complaint must allege "the identity of the person who made the misrepresentation." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted). Here, Plaintiffs have alleged only that, "[d]uring these town-hall meetings and at other times prior to March 2, 2012, **Defendants represented** . . . that if Plaintiffs elected to convert their loans to Infinium into equity, and/or purchase equity in Infinium, that there would be a single class of equity in Infinium and, further, that all equity holders in Infinium— current and future—would be treated equally in all respects and at all times." (SAC ¶ 68, Dkt. No. 39 (emphasis added)). The Seventh Circuit has held, however, that "[a] complaint that attributes misrepresentations to all defendants lumped together for pleading purposes, generally is insufficient." *Sears*, 912 F.2d at 892. Accordingly, Plaintiffs have failed to meet their pleading burden under Rule 9(b).

Plaintiffs further argue that, although the PPM revealed that Defendants could possibly seek additional equity investments that were senior to those of representation, Defendants did not disclose that even prior to soliciting Plaintiffs' investment in the Employee Program, Defendants had been "actively seeking the infusion of new funds in Infinium—to be contributed in return for equity—from third-party investors" who would receive "superior rights" due to Infinium's lack of trading equity. (SAC ¶¶ 70, 101, Dkt. No. 39.) However, these allegations are made "[u]pon information and belief," with no facts supporting them. Although Rule 9(b) does not preclude allegations based on information and belief, a plaintiff relying on such allegations must include the facts upon which the belief is based. *See In re VMS Secs. Litig.*, 959 F.2d at 683-84. Because Plaintiffs here have failed to plead any facts upon which their belief that Defendants had been seeking third-party investors even prior to their solicitation of Plaintiffs' involvement in the Employee Program, this allegation cannot go forward. *See Moak v. Roszak*, No. 05-cv-01652,

10

2005 WL 2563014, at *4 (N.D. Ill. Oct. 6, 2005) (granting the defendants' motion to dismiss where plaintiff failed to state the grounds for allegations made upon information and belief); *Gilford Partners, L.P. v. Sensormatic Elec. Corp.*, No. 96-4072, 1997 WL 570771, at *16-17 (N.D. Ill. Sept. 10, 1997) (dismissing complaint alleging violations of Rule 10b-5 where the plaintiff failed to "plead those facts within its knowledge or belief that demonstrate that its charges are not baseless, and what type of additional information is in the defendants' exclusive control").

      **B.    Devaluation of Plaintiffs' Equity**

Plaintiffs also allege that Defendants made material misstatements regarding the valuation of their class of equity. According to the SAC:

> Upon information and belief, because, among other things, 1) Infinium agreed to pay Hanley, Laurell, and their affiliates an undisclosed premium (based upon a multiple of earnings, not invested capital) for their equity interests in Infinium, and 2) the private, undisclosed redemptions of equity that were being made by Whitman, Johnson and perhaps others, Plaintiffs' class of equity as of March 3, 2012, was immediately reduced to a value below $0, a fact which was not disclosed to Plaintiffs prior to the conversion of their loans to Infinium to equity in Infinium.

(SAC ¶ 93, Dkt. No. 39.) Again, Defendants argue in response that Plaintiffs cannot rely on these alleged misstatements to state a claim because the PPM made adequate disclosures regarding these matters. And, indeed, the PPM disclosed that "Company revenues may fluctuate significantly in the future . . . based on various factors, including factors relating to the financial markets that are outside the Company's control." (PPM at 15, Dkt. No. 16-1.) Defendants also point to the disclosure in the PPM that "[i]n addition to the factors described above, certain Members of the Company are entitled to withdraw certain amounts of capital, and receive certain amount of distributions upon a Member's request, which factors could also lead to the need to raise additional funds." (*Id.* at 18.)

11

But such general disclosures do not insulate Defendants from suit. In essence, Plaintiffs contend that all of the money from the Equity Fund had been pledged to pay Hanley, Laurell, and their affiliates with the knowledge that as a result of those obligations and other money going to insiders, the value of shares in the Employee Plan would be reduced to zero. Furthermore, although this allegation is based on "information and belief," Plaintiffs have pleaded sufficient facts to support it. For example, Plaintiffs allege that by November 11, 2011 Defendants had agreed, or were in the process of coming to an agreement, to redeem the equity interests of Hanley and Laurell. (SAC ¶¶ 62-63, Dkt. No. 39.) Plaintiffs also allege that beginning in late 2011, Whitman and Johnson had begun making undisclosed redemptions of equity in Infinium. (*Id.* ¶ 79.) Less than two months later, Defendants introduced the Employee Program to replace the equity that Infinium owed to Hanley and Laurell. (*Id.* ¶ 65.)

Drawing all inferences in Plaintiffs' favor, as the Court must at this stage in the litigation, these facts are sufficient to support Plaintiffs' belief that all of the money from the Employee Program had been already pledged to various Infinium insiders from the inception of the Employee Program, and that Defendants knew this reduced the equity value of the shares to zero. Further, this alleged omission was material, as there was "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

However, Plaintiffs fail to allege facts establishing that any Defendant had a duty to speak. There is generally no affirmative independent duty for a company to disclose all information that could potentially affect share prices, even when that information is material, unless such silence renders an affirmative statement misleading. *Basic, Inc. v. Levinson*, 485 U.S.

224, 239 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5."); *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995) ("Mere silence about even material information is not fraudulent absent a duty to speak."). In an attempt to establish that Defendants had a duty to speak, Plaintiffs first argue that Defendants owed fiduciary duties to Plaintiffs. (Pls' Resp. at 10, Dkt. No. 28.) This is not the case. At the time of the alleged omissions (which was before Plaintiffs converted their loans into equity as part of the Employee Program), Plaintiffs were creditors of Defendants. "Under Delaware law, [a]s a general rule, there is no fiduciary relationship between a debtor and a creditor."[5] *In re Advance Nanotech, Inc.*, No. 11-10776, 2014 WL 1320145, at *3 (Bankr. D. Del. Apr. 2, 2014) (internal quotation marks omitted). Accordingly, Plaintiffs have not adequately pleaded that any Defendant owed a duty to them prior to the close of the Employee Program offering. *See, e.g., Holstein v. Armstrong*, 751 F. Supp. 746, 748 (N.D. Ill. 1990) (finding no duty to disclose in case where plaintiffs claimed there was a fiduciary duty).

Plaintiffs next contend that there is a duty to disclose under the Supreme Court case *Chiarella v. United States*, 445 U.S. 222 (1980). *Chiarella*, however, is inapposite: that case related to the affirmative disclosure duty of a corporate insider, or of his "tippee," when trading publicly-held stock on nonpublic or inside information. *Id.* at 228-29. No such duty would appear to apply on the facts alleged in this case.

Finally, even where there is no affirmative duty to disclose, an omission of material information that renders any specific affirmative statements misleading can support a claim under Rule 10b-5. *See In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 928 (S.D. Ind.

---

[5] Defendants argue that Delaware law applies to the common law legal principles at issue in this case due to the choice of law provision in Section 7 of the Subscription Agreement that Plaintiffs executed in connection with their investment in the Equity Plan. (Ind. Defs' Mot. Ex. C ¶ 4, Dkt. No. 16-3.) Plaintiffs do not contest this point.

13

2008). A plaintiff wishing to state a claim under this theory of liability, however, must identify with particularity the affirmative statement that an omission renders misleading. *Id.* Plaintiffs have not done so with respect to their allegations that their investment was immediately devalued to $0. Accordingly, Plaintiffs' claims relating to this alleged omission cannot go forward as pleaded.

### C. Right of Redemption

Plaintiffs also claim that Defendants violated Rule 10b-5 by misrepresenting that Plaintiffs would be able to redeem 50% of their investments in the Employee Program in year one and the other 50% in year two. (SAC ¶ 94, Dkt. No. 39.) In fact, according to Plaintiffs, in March 2013, "Infinium suspended Plaintiff's Redemption Rights—claiming that Infinium was in default in its payment obligations under the Redemption Agreement to Hanley, Laurell, and their affiliates." (*Id.* ¶ 80.)

As an initial matter, Plaintiffs fail to plead this alleged misrepresentation with sufficient particularity to satisfy Rule 9(b). The facts alleged in the SAC state as follows:

> In the course of its solicitation of Plaintiffs' conversion of their loans to equity, on March 2, 2012, ***Infinium wrote to Plaintiffs*** and explained that any monies converted from debt to equity or otherwise invested by Plaintiffs in the Employee Capital Pool program would be redeemable 50% in the first year (2013) and 50% in the following year (2014), with the ability, if they desired, to withdraw all of their equity investments from the Employee Capital Pool program in just two years.

(SAC ¶ 74 (emphasis added), Dkt. No. 39.) Plaintiffs fail to allege with any particularity the actual speaker who made this alleged misrepresentation, which in itself is fatal to Plaintiffs' claim. *See Vicom, Inc.*, 20 F.3d at 777 (in pleading a fraud claim, the complaint must allege the identity of the person who made the misrepresentation). Accordingly, this claim cannot go forward.

In addition, disclosures in the PPM bar this claim as currently pleaded. The PPM disclosed that Plaintiffs' redemption rights "shall be subject to deferral or limitation . . . in the event the Board determines, acting reasonably and in good faith, that any requested withdrawal would cause the Company to fail to maintain a level of capital necessary to meet any . . . requirement or rule." (PPM at 9-10, Dkt. No. 16-1.) This disclosure bars any claim that Defendants made an actionable misstatement by informing that Plaintiffs would be able to redeem their equity in 2013 and 2014. *See e.g., In re VMS Sec. Litig.*, 752 F. Supp. at 1395; *Nielsen*, 849 F. Supp. at 1243.

Accordingly, the SAC as currently pleaded does not state a claim that Defendants violated Rule 10b-5 by misrepresenting Plaintiffs' right of redemption.[6]

### D. Line of Credit

Plaintiffs also allege that, contrary to representations at the town hall meetings that Infinium had access to a $20 million credit facility, "it was almost certain that Infinium's lender, Fifth Third Bank, would eventually terminate the purportedly untapped, twenty-million dollar line of credit to Infinium—which, upon information and belief, eventually it did." (SAC ¶ 95 Dkt. No. 39.) But the complaint does not identify which of Defendants allegedly made the purported misrepresentation. Instead, the allegation asserts only that,

> [d]uring these town-hall meetings, **Defendants also touted to Plaintiffs** the availability of an untapped, twenty-million dollar credit facility from Fifth Third Bank, a financial institution and national banking association, that after the offering was completed on March 2, 2012, would, for cash flow purposes, be available to fund the business of Infinium and to pay down the debt due to Hanley, Laurell, and their affiliates under the Redemption Agreement.

---

[6] In their response, Plaintiffs argue that their theory of liability proceeds on the allegation that Defendants were aware at the time Plaintiffs entered into the Employee Plan that Plaintiffs' rights of redemption would have to be suspended. (Pls' Resp. at 4, Dkt. No. 28.) That specific allegation does not appear in the SAC, however, and thus the Court disregards this argument. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (a court's determination of a motion to dismiss is "limited to the pleadings.").

15

(*Id.* ¶ 71 (emphasis added).) Again, group-pleading the speaker of an omission is insufficient to state a claim under Rule 9(b). *See Sears*, 912 F.2d at 892. Furthermore, these allegations do not state sufficient facts to proceed. Plaintiffs allege that Fifth Third terminated its line of credit only upon information and belief, without providing supporting facts. Thus, this cannot serve as an actionable misstatement, as these allegations were made "[u]pon information and belief" with no facts pled in support of this belief. *See, e.g., Moak*, 2005 WL 2563014, at *4; *Gilford Partners, L.P.*, 1997 WL 570771, at *16-1.

If Plaintiffs wish to re-plead this claim, they will also need to overcome the fact that the PPM informed Plaintiffs that "[a]dditional financing may not be available when needed or on terms favorable to Infinium. If Infinium is unable to obtain additional financing when needed . . . this inability to access capital may adversely affect Infinium . . . ." (PPM at 18, Dkt. No. 16-1.) Further, while Plaintiffs allege that the premium paid by Infinium to Hanley, Laurell, and their associates, as well as to Whitman and Johnson "caused Infinium to be in breach of its loan covenants" (SAC ¶ 96, Dkt. No. 39), the SAC itself concedes that the PPM disclosed the redemption of equity by Hanley, Laurell, and their affiliates. (*Id.* ¶ 71.) The PPM further disclosed that this redemption "will cause a significant change in the capital structure of Infinium, and could constrain or even eliminate Infinium's ability to obtain financing for its business pursuits. The servicing of this debt will constrain Infinium's available capital and could have a material adverse effect on Infinium's business." (PPM at 18, Dkt. No. 16-1.)

### E. Alleged Omissions

Plaintiffs also claim that Defendants failed to disclose a number of allegedly material facts. (SAC at ¶ 101-102, Dkt. No. 39.) As discussed above, however, there is no affirmative independent duty for a company to disclose all information that could potentially affect its stock

16

price, unless such silence renders a particular affirmative statement misleading. *See Stransky*, 51 F.3d at 1331. Plaintiffs here have failed to state with particularity how the alleged omissions render any affirmative disclosure misleading; thus they fail to state a claim as to any of these purported omissions. *See In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d at 928.

## II.     Common Law Breach of Fiduciary Duty

Plaintiffs also have asserted a cause of action for common law breach of fiduciary duty. As mentioned above, under Delaware law, a debtor does not generally owe a fiduciary duty to a creditor. *In re Advance Nanotech, Inc.*, 2014 WL 1320145, at *3. Thus, to the extent Plaintiffs' breach of fiduciary duty claims relate to alleged misrepresentations made to them prior to their participation in the Employee Program, Plaintiffs' claims cannot go forward.

That said, read fairly, allegations related to actions and omissions made by Defendants after Plaintiffs became minority shareholders may establish a breach of Defendants' fiduciary duty. (*See* SAC ¶¶ 108-09, Dkt. No. 39.) So, although some of the allegations that form the basis for Plaintiffs' breach of fiduciary duty claim are identical to those underlying their Rule 10b-5 claim, the common law cause of action is couched in terms of Defendants' duty to Plaintiffs after they had converted their loans into equity. In addition to stating claims that Defendants failed to reveal crucial information to Plaintiffs after they had become equity holders, the complaint also in essence alleges that Defendants suspended Plaintiffs' redemption rights so that they could go forward with the redemption of Hanley's and Laurell's equity positions at a premium and at a time when the company was suffering from cash flow issues. (*Id.*)

Infinium is a limited liability company ("LLC") formed under the Delaware Limited Liability Company Act, . (*See* Ind. Defs' Mot. Ex. C, Dkt. No. 16-3.) As such, Infinium's managers owed traditional fiduciary duties of loyalty and care to other members of the LLC,

17

including Plaintiffs. *See William Penn P'ship v. Saliba*, 13 A.3d 749, 756 (Del. 2011) ("[M]anagers of a Delaware limited liability company owe traditional fiduciary duties of loyalty and care to the members of the LLC, unless the parties expressly modify or eliminate those duties in the operating agreement.").

Nonetheless, Plaintiffs cannot go forward with their breach of fiduciary duty claim as pleaded in the SAC. The core of Plaintiffs' fiduciary duty claim is that Defendants knowingly concealed certain facts that, had Plaintiffs been aware of them, would have led Plaintiffs to "exercise[] their redemption rights and redeem[] their equity interests in Infinium immediately and convert[] [them] to cash, well before their redemption rights were suspended." (SAC ¶ 108, Dkt. No. 39.) A fiduciary duty claim premised on the allegation that a defendant knowingly misled a plaintiff in breach of a fiduciary duty sounds in fraud and therefore is subject to the heightened pleading standards of Rule 9(b). *See Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008). As set out above, Plaintiffs have failed to allege the persons who misled them with particularity. Thus, as currently pleaded, Plaintiffs' fiduciary duty claims cannot proceed either.

### III. Common Law Fraud

Under Delaware law, the elements of common law fraud are: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). Delaware recognizes three categories of common law fraud: affirmative falsehoods, active concealment, and silence in the

face of a duty to speak. *Snowstorm Acquisition Corp. v. Tecumseh Prod. Co.*, 739 F. Supp. 2d 686, 708 (D. Del. 2010). Although a claim for common law fraud is not subject to the heightened pleading standards of the PSLRA, it still must be pleaded with particularity consistent with Rule 9(b). *Id.*

Plaintiffs' common law fraud claim is based on the alleged misrepresentations by Defendants that there would be only one class of equity in Infinium and that there was an untapped $20 million credit facility from Fifth Third Bank. (SAC ¶ 112, Dkt. No. 39.) These allegations cannot are not sufficient to state a claim because they do not identify with specificity who made the misstatements. *See Sears*, 912 F.2d at 892. Plaintiffs also base their common law fraud claim on a number of purported omissions by Defendants. (SAC ¶ 117, Dkt. No. 39.) However, Plaintiffs' allegations fail to establish a duty to speak. All of the alleged omissions took place "prior to the conversion of their loans to Infinium to equity in Infinium," and thus Infinium owed no fiduciary duty to Plaintiffs. *See In re Advance Nanotech, Inc.*, 2014 WL 1320145, at *3. And although a duty to speak arises once the defendant has chosen to make other statements that would be made misleading due to a defendant's silence, *see Metro Commc'n Corp. BVI v. Advanced Mobilecomm Tech. Inc.*, 854 A.2d 121, 155 (Del. Ch. 2004), Plaintiff fails to allege which of Defendants' statements were made misleading by the alleged omissions. Accordingly, Plaintiffs' Delaware common law fraud claim also fails to state a claim under the heightened pleading standard of Rule 9(b).

## CONCLUSION

For the foregoing reasons, the Court grants the Individual Defendants' Motion to Dismiss (Dkt. No. 14) and the Infinium Defendants' Motion to Dismiss (Dkt. No. 17). The SAC is dismissed without prejudice. Plaintiffs are granted leave to file a third amended complaint that remedies the pleading deficiencies of the prior complaint.

ENTERED:

Dated: March 3, 2016

Andrea R. Wood
United States District Judge