IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KURT V. CORNIELSEN, GARRETT FIFE, MIKE FOLEY, ALI GHAJARNIA, MARCUS HESS, LUCAS HULING, TIMOTHY KACMAR, THOMAS KANE, SARAH KETVIRTIS, MINJONG KIM, JOEL KOS, WILL KUHL, RAMESH KUMAR, BRUCE LAWRENCE JR., MATT LECH, JASON LEUNG, JUN LIU, DAVE LOHMANN, MOHAMMAD MALEK, RICHARD MARYNOWKSI, ADITYA MEHTA, DAVID MEINHART, ERIC MOLAS, WES NORDINE, LUIS RAMIREZ, IAN REID, MICHAEL RICHARDS, BRET RIETOW, BRUCE RISHER, NICK ROUPAS, ANDERSEN SCHNEIDER, RYAN SHERMAN, ERIC SZURGOT, ANDREA TERMINI, MITCH TYSON, ALAN URBAN, TONI VOLLMERS, GORDON WALLACE, JACK WEBER, and TIMOTHY WRZESINSKI, all individuals, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 14-cv-00098 |
| INFINIUM CAPITAL HOLDINGS, LLC, a Delaware limited liability company, INFINIUM CAPITAL MANAGEMENT, LLC, a Delaware limited liability company, and CHARLES F. WHITMAN, GREGORY EICKBUSH, BRIAN JOHNSON, and SCOTT ROSE, all individuals, | ) ) ) ) ) ) ) | Judge Andrea R. Wood |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are former employees of Defendants Infinium Capital Holdings, LLC

("Infinium Holdings") and Infinium Capital Management, LLC ("Infinium," and along with

Infinium Holdings, "Infinium Defendants"). Plaintiffs had loaned money to the Infinium Defendants and subsequently participated in what was known as the "Infinium Employee Capital Pool program" or the "Employee Equity Incentive Plan" ("Employee Program"), in which Plaintiffs' loans were converted into equity in the company. Soon after Plaintiffs participated in the plan, the Infinium Defendants failed. Plaintiffs subsequently filed the instant lawsuit against the Infinium Defendants, as well as Infinium board members Charles Whitman, Gregory Eickbush, Brian Johnson, and Scott Rose (collectively, "Individual Defendants," and along with Infinium Defendants, "Defendants"). Plaintiffs allege that Defendants violated securities laws, breached their fiduciary duties, and committed fraud. The Individual Defendants and the Infinium Defendants each filed a motion to dismiss the action. The Court granted the motions to dismiss. Thereafter, Plaintiffs filed its Fourth Amended Complaint ("FAC"). In response, Defendants again filed motions to dismiss, which are now before the Court. (Dkt. Nos. 82, 84.) For the reasons stated below, the Court grants these motions to dismiss as well.

## BACKGROUND[1]

Plaintiffs were all employees of Infinium, a diversified alternative asset and risk management firm with offices in Chicago, Houston, New York, and London. (FAC ¶¶ 2, 11–46, 63, Dkt. No. 81.) The Individual Defendants were all Infinium officers or members of its Board of Managers. (*Id.* ¶¶ 50–54.) Whitman also served as CEO of Infinium. (*Id.* ¶ 51.)

According to Plaintiffs, the Employee Program was designed to meet two goals: *first*, to replace capital that had been withdrawn from Infinium, and *second*, to have sufficient funds on hand for Infinium to purchase the equity interests of several of its members. (*Id.* ¶ 68.) Beginning in late 2011, Whitman and Johnson began to make private, undisclosed redemptions of Infinium

---

[1] The factual description is taken in large part from the Court's previous Memorandum Opinion and Order in this matter (Dkt. No. 79), with revised citations to the FAC (Dkt. No. 81).

equity. (*Id.* ¶ 86.) Additionally, in approximately November 2011, Infinium, through the Individual Defendants, began exploring the purchase of the equity interests of its member George Hanley, who served on the Advisory Board of Infinium, and his affiliates. (*Id.* ¶ 65.) Hanley and his affiliates owned a substantial equity stake in Infinium. (*Id.* ¶ 64.) By November 2011, Infinium had agreed to redeem the equity interest of its member Nathan Laurell, who also served on its Advisory Board, for $8,604,779. (*Id.* ¶ 66.) Prior to March 2, 2012, Plaintiffs made loans to Infinium collectively in the amount of approximately $5,028,373.37. (*Id.* ¶ 63.) These loans ranged in amounts from $5,000 to $550,000. (*Id.*)

Beginning on or about January 1, 2012, Infinium and the Individual Defendants began to offer Plaintiffs an opportunity to participate in the Employee Program, under which Plaintiffs' loans to Infinium would be converted into equity. (*Id.* ¶ 68.) The objective of the Employee Program, according to Plaintiffs, was to allow Infinium and the Individual Defendants to replace a portion of the equity that Hanley, Laurell, and their affiliates were redeeming and to provide trading capital for the business. (*Id.*)

Infinium first solicited participation in the Employee Program in an e-mail dated February 14, 2012. (*Id.* ¶¶ 69–70.) Infinium held three so-called "town-hall" meetings on February 16, February 17, and February 22, 2012, to discuss the details and merits of Plaintiffs' participation in the Employee Program. (*Id.* ¶ 71.) Each Plaintiff attended at least one of these three town-hall meetings, all of which were organized by Infinium purportedly to "provide [Plaintiffs] a high level overview of the goals and mechanics of the Employee [Program]." (*Id.* at 72 (internal quotations omitted).) During these town-hall meetings, and at other times prior to March 2, 2012, Defendants represented that if Plaintiffs elected to convert their loans to Infinium into equity or to purchase equity in Infinium, there would be a single class of equity in Infinium

3

and that all equity holders—current and future—would be treated equally in all respects and at all times. (*Id.* ¶ 73.) During the town-hall meetings, Defendants also touted the availability of an untapped, $20 million dollar credit facility from Fifth Third Bank that would be available after the offering to fund Infinium's business and to pay down the debt due to Hanley, Laurell, and their affiliates. (*Id.* ¶ 77.)

Infinium prepared and disseminated on February 14, 2012 a "Private Placement Memorandum" ("PPM") to Plaintiffs. (*Id.* ¶ 78.) The PPM purportedly disclosed the risks associated with acquiring equity in Infinium. (*Id.*) The PPM addressed Infinium's acquisition of the equity ownership of Hanley, Laurell, and their affiliates as follows:

> **Redemption Debt.** In connection with the redemption debt of the equity of interests of ICM held by George Hanley, Nathan Laurell, and their affiliates, which redemption was effective as of January 1, 2012, the Company will issue secured debt of approximately $53,000,000. The debt owed to George Hanley, Nathan Laurell and their affiliates will be payable over a period of five (5) years….

(*Id.* ¶ 79.)

In the course of soliciting the conversion of their loans to equity through the Employee Program, on March 2, 2012, Infinium wrote to Plaintiffs and explained that any monies converted from debt to equity (or otherwise invested) in the Employee Program would be redeemable 50% in the first year (2013) and 50% in the following year (2014). (*Id.* ¶ 81.) The March 2, 2012 correspondence also told Plaintiffs that they would be able, if they desired, to withdraw all of their equity investments from the Employee Program in just two years. (*Id.*) Prior to March 2, 2012, Defendants also provided certain Plaintiffs with documents that represented that after Hanley, Laurell, and their affiliates redeemed their equity, Infinium would have remaining equity of $49,987,424. (*Id.* ¶ 83.) Based upon the representations made in the PPM, the town hall meetings, and other written communications, Plaintiffs each elected to convert their

4

loans to equity and, in some cases, to invest additional funds and to participate in the Employee Program. (*Id.* ¶ 84.)

On or about March 8, 2013, Infinium suspended Plaintiffs' redemption rights, claiming that Infinium was in default in its payment obligations to Hanley, Laurell, and their affiliates. (*Id.* ¶ 87.) On or about September 1, 2013, Infinium's acting Chief Executive Officer, Mark Palchak, revealed during an "investor call" with Plaintiffs that their investments through the Employee Program prior to March 2, 2012 had become "worthless" and were valued at "negative $18,000,000." (*Id.* ¶¶ 88–90.) Palchak further represented that to avoid a takeover by Hanley, Infinium had converted a portion of Hanley's and Laurell's debt to equity and agreed to eliminate the Plaintiffs' right to redeem their investments in the Employee Plan. (*Id.* ¶ 89.) During the Investor Call, Palchak also revealed that although Plaintiffs' equity was now "worthless," there was another class of equity in Infinium, which he referred to as the "Family Office Equity." Palchak claimed that this other class of equity was unaffected by the aforementioned events, as it was superior to Plaintiffs' equity interest and had been invested under an agreement which protected it from certain losses. (*Id.* ¶ 90.)

Plaintiffs subsequently brought this lawsuit, asserting a number of claims based on the loss of their investments in the Employee Plan, including causes of action for federal securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C § 78j, and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder (Count I); common law breach of fiduciary duty (Count II); and common law fraud (Count III). Those claims are all repeated in Plaintiffs' Fourth Amended Complaint. Defendants again seek to have all of these claims dismissed in their entirety pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

**DISCUSSION**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). In deciding such a motion, the Court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 9(b) requires a plaintiff alleging fraud to state the circumstances constituting the fraud "with particularity." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)). In other words, Rule 9(b) requires a plaintiff pleading fraud "to state 'the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

## I. Section 10(b) of the Exchange Act and Rule 10b-5

To state a claim under Rule 10b-5, a plaintiff must allege that: (1) the defendant made a misstatement or omission (2) of material fact; (3) with *scienter*; (4) in connection with the purchase or sale of securities; (5) on which the plaintiff justifiably relied; (6) and that proximately caused the plaintiff's economic loss. *See Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). To satisfy the final element, a plaintiff must allege both transaction causation and loss causation—that is, the plaintiff must allege "that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of sale" and "that it was the very facts about which the defendant lied which caused its injuries." *Id.*

Complaints alleging violations of Rule 10b-5 are subject to Rule 9(b)'s heightened pleading standard. *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). Allegations of securities fraud are also subject to the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), which requires that "[t]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Furthermore, "the complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).

As with their earlier complaints, Plaintiffs claim that Defendants made a number of actionable misstatements and omissions. In particular, Plaintiffs claim that Defendants:

(1) misrepresented that if Plaintiffs elected to convert their loans to Infinium into equity through the Employee Program, there would be only one class of equity in Infinium;

7

(2) failed to disclose material information relating to the fact that Plaintiffs' class of equity was and would be immediately reduced to a value below $0;

(3) misrepresented that Plaintiffs would be able to redeem 50% of their investments in the Employee Program in year one and the other 50% in year two;

(4) misrepresented that Infinium would have access to a $20 million line of credit; and

(5) failed to disclose other miscellaneous material information.

The Court finds that Plaintiffs have insufficiently pleaded *scienter*, have failed to identify the speakers of the alleged misstatements with particularity, and have failed to plead a duty to speak with respect to the alleged omissions. Thus, the Court dismisses Plaintiffs' Rule 10b-5 claim.

### A. Allegations of Scienter

"The PSLRA provides that the complaint in a securities-fraud action must, 'with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' 15 U.S.C. § 78u–4(b)(2). That 'required state of mind' is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). To be clear, "the plaintiffs must create a strong inference of scienter with respect to each individual defendant" in multiple defendant cases. *Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008).

Plaintiffs' allegations of scienter are limited to one paragraph that claims that during testimony before the Securities and Exchange Commission, a witness was shown some unspecified "documents authored, and/or received, by Whitman, Eickbush, Rose, and Johnson showing" a number of propositions relating to Infinium's financial state. (FAC ¶ 98, Dkt. No. 81; Pls.' Opp. to Mots. to Dismiss at 10, Dkt. No. 86.) The allegations do not identify the documents,

nor do they identify which individual defendant authored documents corresponding to the particular propositions. Such improper group pleading fails to sustain Plaintiff's pleading burden under the PLSRA and Rules 9 and 12.

### B. Identifying Speakers of Alleged Misstatements with Particularity

In its previous opinion, the Court considered five classes of Defendants' alleged misstatements and omissions: (1) misstatements hiding that there were in fact two classes of equity interest; (2) omissions regarding the valuation of Plaintiffs' equity; (3) misstatements about Plaintiffs' right of redemption; (4) misstatements about Infinium's line of credit; and (5) other material omissions. The allegations in Plaintiffs' Fourth Amended Complaint substantially repeat the allegations, and thus the Court again utilizes this grouping.

The Court previously dismissed Plaintiffs' allegations with respect to classes of misstatements (1), (3), and (4), because Plaintiffs failed to identify which Defendants made those statements, as the previously-operative Second Amended Complaint stated only that "Defendants" or "Infinium" made them. (Memo. Op. & Order at 9–10, 14, 16, Dkt. No. 79 (citing SAC ¶¶ 68, 71, 74, 76).) Plaintiffs have failed to rectify this problem in their Fourth Amended Complaint. Instead, they have just replaced the words "Defendants" or "Infinium" with a list of the names of the Individual Defendants "Whitman, Eickbush, Rose, and Johnson." (FAC ¶¶ 73, 77, 81, 83, Dkt. No. 81.) Simply naming all of the Individual Defendants in place of the group terms does not convert Plaintiffs' previous allegations into ones that sufficiently particularly identify who of the Individual Defendants made each of the alleged misstatements.

Plaintiffs do not assert that their revised allegations are literally true in that each of the Individual Defendants made each of the alleged misstatements. Rather, Plaintiffs argue that group pleading is only disallowed to establish authorship of documents; it is not disallowed for

9

attribution of spoken statements. (Pls.' Opp. to Mots. to Dismiss at 9, Dkt. No. 86 (citing *Pugh*, 521 F.3d at 693–94).) The Court rejects this argument. In *Pugh*, the Seventh Circuit stated that it has "rejected the 'group pleading doctrine,' a judicial presumption that statements in group-published documents are attributable to officers who have daily involvement in company operations; thus, the plaintiffs must create a strong inference of scienter with respect to each individual defendant." *Pugh*, 521 F.3d at 693. But this is inapposite. The question here is not about *scienter*, but rather whether Plaintiffs can plead that each Defendant made misrepresentations without providing specific detail about which misrepresentations each Defendant made. The Seventh Circuit has made clear that such allegations do not pass Rule 9(b) muster. *Sears*, 912 F.2d at 893 ("The appellants fail to satisfy this 9(b) standard: their complaint is bereft of any detail concerning who was involved in each allegedly fraudulent activity . . . . Rather, the complaint lumps all the defendants together and does not specify who was involved in what activity.")

### C. Duty to Speak with Respect to Alleged Omissions

In its previous opinion, the Court observed that, with respect to the omissions of which Plaintiffs complain, Defendants did not have any fiduciary obligation to the Plaintiffs. (Memo. Op. & Order at 13, Dkt. No. 79.) That is, the alleged omissions occurred when Plaintiffs were creditors of Defendants, and there is no fiduciary relationship between a debtor and creditor under Delaware law. (*Id.* (citing *In re Advance Nanotech, Inc.*, No. 11-10776, 2014 WL 1320145, at *3 (Bankr. D. Del. Apr. 2, 2014)).)

Plaintiffs argue that this is mistaken and contend that they were in fact owed fiduciary obligations for two reasons. First, Plaintiffs contend that they were creditors in Defendants' insolvent corporation and were thus *de facto* shareholders who were owed fiduciary obligations.

This argument is unavailing. Plaintiffs' Fourth Amended Complaint alleges that Infinium was in operation as of early 2015 and therefore solvent. (FAC ¶ 50, Dkt. No. 81.) Delaware law makes clear that creditors of a solvent corporation, even if operating in the "zone of insolvency," are not owed fiduciary obligations by the corporation's directors. *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007).

Second, Plaintiffs argue that Defendants were engaging in self-dealing—that they were asking for Plaintiff's money for Infinium while cashing out their own equity—and thus owed a fiduciary duty to "demonstrate utmost good faith." Plaintiffs' argument has it backwards. A fiduciary is not allowed to engage in conduct that constitutes impermissible self-dealing. *See, e.g.*, *Solomon v. Armstrong*, 747 A.2d 1098, 1115 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000) (providing that self-dealing is a typical breach of a fiduciary's duty of loyalty). But the presence of a fiduciary duty is a prerequisite to bring a claim for improper self-dealing. *See, e.g.*, *id.* (stating that self-dealing occurs "when a corporate fiduciary is on both sides of a transaction"); *Lee v. Pincus*, 2014 WL 6066108, at *13 (Del. Ch. Nov. 14, 2014) (stating that "the familiar definition of self-dealing [is] a transaction in which a fiduciary stands 'on both sides'"). Indeed, the cases Plaintiffs cite in support of their argument were brought by shareholders—who were owed fiduciary obligations due to their status as shareholders. *See Gottlieb v. Heyden Chemical Corp.*, 91 A.2d 57, 59 (Del. 1952); *David J. Greene & Co. v. Dunhill International Inc.*, 249 A.2d 427, 429 (Del. Ch. 1968).

Thus, because the alleged omissions occurred when Plaintiffs had not yet become shareholders,[2] Plaintiffs have not alleged a factual basis giving rise to a fiduciary relationship. As such, there was generally no affirmative independent duty for Defendants to disclose all

---

[2] Plaintiffs at times suggest that they are also asserting claims based on alleged omissions that occurred after they became shareholders, when they were in fact owed a fiduciary duty. But, as discussed in Section I.A., these claims still fail because Plaintiffs have not adequately pleaded *scienter*.

11

information that could potentially affect the company's equity valuation. (Memo. Op. & Order at 13, Dkt. No. 79 (citing *See In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 928 (S.D. Ind. 2008)).)

This does not end the inquiry, however, because the alleged omissions could be actionable if Defendants' silence would render a particular affirmative statement misleading. (*Id.* (citing *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 928 (S.D. Ind. 2008).) In its prior opinion, the Court dismissed Plaintiffs' claims relating to the omissions in classes (2) and (5) because Plaintiffs did not state with particularity how the alleged omissions render any affirmative disclosure misleading. (Memo. Op. & Order at 14, Dkt. No. 79 (citing *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1331 (7th Cir. 1995)).) Plaintiffs' Fourth Amended Complaint does nothing to fix this; it still fails to identify how the alleged omissions made any affirmative disclosures misleading. (*See, e.g.*, FAC ¶ 119, Dkt. No. 81.)

*   *   *

Thus, in summation, Plaintiffs' Fourth Amended Complaint fails to state a claim for violations of Section 10(b) of the Exchange Act and Rule 10b-5. First, Plaintiffs have not adequately pleaded *scienter*. Moreover, Plaintiffs' Fourth Amended Complaint has failed to rectify the pleading deficiencies previously identified by the Court, in that the Fourth Amended Complaint still does not identify with sufficient particularity which of the Individual Defendants made each of the alleged misstatements and still does not identify how the alleged omissions rendered any of Defendants' affirmative statements misleading.

## II. Common Law Claims

Plaintiffs other claims, for breach of fiduciary duty and fraud, are brought under Delaware common law. As the Court previously noted, both claims are subject to the heightened pleading standards of 9(b). (Memo. Op. & Order at 17–19, Dkt. No. 79.)[3]

Just as in its previous opinion and above, the Court dismisses the breach of fiduciary duty and fraud claims based on alleged misstatements because Plaintiffs have not adequately pleaded *scienter*. Plaintiffs' theory on its common law claims is that Defendants knowingly made misrepresentations and concealed certain facts to the detriment of Plaintiffs. (FAC ¶¶ 131(e), 132, 135, 140, Dkt. No. 81.) Both a fraud claim and a breach of fiduciary duty claim that is premised on the allegation that a defendant knowingly misled a plaintiff are subject to the heightened pleading standards of Rule 9(b). *See Snowstorm Acquisition Corp. v. Tecumseh Prod. Co.*, 739 F. Supp. 2d 686, 708 (D. Del. 2010) (fraud); *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008) (breach of fiduciary duty). Because, as set forth above, Plaintiffs have not sufficiently pleaded *scienter* to the satisfaction of Rule 9(b), the Court dismisses Plaintiffs' common law claims in their entirety.

---

[3] With respect to the breach of fiduciary duty claim, the Court limited Plaintiffs' claims to misstatements and omissions that occurred after Plaintiffs became equity holders, when such a fiduciary duty would have attached. (Memo. Op. & Order at 17–19, Dkt. No. 79.) As discussed above, none of the added factual allegations in Plaintiffs' Fourth Amended Complaint changes this determination.

## CONCLUSION

For the foregoing reasons, the Court grants the Individual Defendants' Motion to Dismiss (Dkt. No. 84) and the Infinium Defendants' Motion to Dismiss (Dkt. No. 82). The Fourth Amended Complaint is dismissed without prejudice. Plaintiffs are granted leave to file a fifth amended complaint that remedies the pleading deficiencies of the prior complaint. This will be Plaintiffs' final opportunity to rectify its pleading deficiencies.

ENTERED:

Dated: November 18, 2016

_____
Andrea R. Wood
United States District Judge